**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary McNamara, Individually, and on Behalf of All Other Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Infusion Software, Inc., et al.,<br><br>Defendants. | No. CV-17-04026-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiff's Motion to Approve Settlement Agreement (the "Motion"). (Doc. 247) Defendant has agreed to the Motion, reserving the rights to object to the upcoming motion and application for attorney's fees which Plaintiff indicated she will file following approval of the Settlement Agreement. (Doc. 248) The parties set forth the terms and conditions of their settlement in their Class Action Settlement Agreement (the "Settlement Agreement"), which Plaintiff has attached to her Motion. (Doc. 247, Ex. 1) The Court incorporates into this Order the definitions in the Settlement Agreement, including the capitalized terms as used in the Settlement Agreement.

This is not a traditional class action settlement subject to Rule 23 and the process of preliminary approval followed by a final fairness hearing. Instead, Plaintiff brought a collective action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by Defendants and the Court must review the settlement agreement under the appropriate standard. This is a FLSA collective action, which is different from a class action: participants affirmatively choose to be bound by the settlement agreement and there

are no absent class members whose claims are being settled because such absent class members are not bound by the case's outcome. *See, e.g.*, *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48, 49 (S.D.N.Y. 1972).

While the Ninth Circuit Court of Appeals has not specifically addressed the procedure to settle FLSA claims, numerous district courts throughout the Ninth Circuit have followed the lead in the seminal case of *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See e.g.*, *Juvera v. Salcido*, 2013 WL 6628039, at *7–8 (D. Ariz. 2013); *McKeen–Chaplin v. Franklin American Mortg. Co.*, 2012 WL 6629608, at *2 n.4 (N.D. Cal. Dec. 19, 2012) (citations omitted). In *Lynn's*, the Eleventh Circuit held that

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.
>
> The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

679 F.2d at 1352–53. When parties seek approval of a FLSA settlement, a district court may approve the settlement if it reflects a "reasonable compromise over the issues." *Lopez v. Arizona Public Service Co.*, 2010 WL 1403873, at *1 (D. Ariz. Jan. 27, 2010) (quoting *Lynn's*, 679 F.2d at 1352–53). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages . . . the court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Khanna v. Inter–Con Sec. Systems, Inc.*, 2012 WL 4465558, at *10 (E.D. Cal. Sept. 25,

2012) (citations and internal quotation marks omitted).

The Court should therefore approve a fair and reasonable settlement if it was reached as an arm's length resolution of contested litigation to resolve a bona fide dispute under the FLSA. *Lynn's*, 679 F.2d at 1352–54. The Court's analysis is as follows.

1. **Bona Fide Dispute**

The case involves disputed issues of overtime compensation under the FLSA for some of Defendants' employees. Prior to reaching a settlement agreement, the parties disagreed on every issue in the case and vigorously litigated each one of those issues: the job duties of each Plaintiff; whether some of the FLSA exemptions applied; the state of mind of the Defendants in violating the FLSA; whether the so-called "fluctuating work week method" applied to Plaintiffs at all; and the hours each Plaintiff had actually worked. (Docs. 208–213; 223–229; 235–237) The parties engaged in substantial discovery and several unsuccessful settlement conversations as well. (Doc. 247-2) Accordingly, the Court finds that a bona fide dispute exists, and it would be resolved by the proposed settlement agreement.

2. **Fair and Reasonable**

A district court may approve an FLSA settlement if the proposed settlement reflects "a reasonable compromise over [disputed] issues." *Lynn's*, 679 F.2d at 1354. "There are, however, no agreed upon factors to consider in evaluating a proposed FLSA settlement." *Almodova v. City and County of Honolulu*, 2010 WL 1372298, at *4 (D. Haw. March 31, 2010). "Some courts have applied the factors for approval of class action settlements by analogy." *Id.* Here, the parties contend that the settlement is fair and reasonable because it was negotiated at arm's length by experienced counsel, provides meaningful, significant monetary relief to Plaintiffs, and it also eliminates the risks on both sides if such complex litigation continued to resolution on the merits. (Doc. 247 at 7) They further allege that the $1,500,000 settlement payment (exclusive of service awards and attorney's fees) constitutes significant and meaningful relief to the Plaintiffs who submitted hours worked.

3

(Doc. 247 at 7) Plaintiff also provides the vague statement that "the settlement accounts for the risk that such recovery may not occur at all after trial and/or any appeal." (Doc. 247 at 7) When the parties have engaged in litigation and then submit a settlement agreement for court approval, it is "more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's*, 679 F.2d at 1354.

      Overall, the Court finds that the Settlement Agreement is fair and reasonable but for three exceptions which prevent it from approving the Settlement Agreement in its current form. First, the Settlement Fund and its breakdown as to the payment to each Plaintiff who submitted hours worked omit one important detail: the parties have not provided the Court with any information that would enable it to evaluate whether $1,500,000 is a reasonable settlement in light of the maximum recovery Plaintiffs could have obtained if the action was concluded on the merits in their favor. The Settlement Agreement does not provide estimates regarding the number of overtime hours worked by each Plaintiff and information regarding the potential range of recovery for each Plaintiff. Instead, Plaintiff lists in general terms the factors that the parties considered in reaching the figure, such as the amount of overtime hours claimed by each employee, the overtime calculations made on behalf of each employee, and the position each employee held and how a FLSA duties analysis was likely to apply to each employee. (Doc. 257 at 8) This is the kind of information the Court needs to evaluate the fairness of the Settlement Fund and it is not the duty of the Court to engage in a fishing expedition in the record attempting to extract such information. The Court needs to be informed of the possible range of recovery for each of the Plaintiff who submitted hours and needs the information the parties agreed on regarding factors 1, 2, 5, and 7 of the factors listed on page 7 of Plaintiff's Motion. (Doc. 247 at 8) Given that the parties indicated they agreed on the figures in Exhibit A to the Settlement Agreement, it should not be too burdensome for them to provide the Court with the information.

      Second, Section 3.1 "Release by Plaintiff and Collective" contains, buried in the

4

middle of the section, language that is very vague. It states that "Plaintiff and the Service Award Plaintiffs will execute a full general release prepared by Defendants and approved by Plaintiff's Counsel." (Doc. 247 at 7) Although the Court finds that the rest of the language of the release section is not overly broad, this provision itself is concerning to the Court because it cannot ascertain what a "general release" would entail. Indeed, the general release could broaden the scope of the release beyond what is fair and reasonable without the Court's input and after the Court had the opportunity to approve the Settlement Agreement. Courts have found that overly broad release provisions, which release a Defendant from all claims to settle their wage claims, including claims that are unrelated to the claims asserted in the complaint, are improper in FLSA and class action settlements. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1347, 1350–1352 (M.D. Fla. 2010) (FLSA settlement); *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1284 (M.D. Ala. 2011) (same); *Gambrell v. Weber Carpet, Inc.*, 2012 WL 5306273, at *2, 5–6 (D. Kan. 2012) (same); *see also Bond. v. Ferguson Enterprises, Inc.*, 2011 WL 284962, at *7 (E.D. Cal. 2011) (finding release overbroad in class action where release did not track the extent and breadth of Plaintiffs' allegations and released unrelated claims of any kind or nature up to the date of the agreement); *Kakani v. Oracle Corp.*, 2007 WL 1793774, at *2–3 (N.D. Cal. 2007) (rejecting a settlement in part because of the "draconian scope" of the proposed release, which, among other things, released and forever discharged the defendant from any and all claims that were asserted or could have been asserted in the complaint whether known or unknown). The Court finds that the parties have failed to demonstrate that it would be fair and reasonable for the Court to enforce the broad general release provision contained in Section 3.1 of the Settlement Agreement. Unless the parties can explain to the Court and show what a general release would look like in this case, the Court cannot find that the Settlement Agreement is fair and reasonable.

Third, the reversion clause, Section 1.7, provides that "[a]ny amount remaining in the Settlement Fund six months after the distribution of payments to Plaintiffs and the

Collective shall revert back to Keap." (Doc. 247-1 at 3) Other courts have noted, and this Court agrees, that where "a statute's objectives include deterrence, as does the FLSA's, it would contradict these goals to permit the defendant to retain unclaimed funds." *Khanna v. Inter–Con Sec. Sys. Inc.*, 2012 WL 4465558, at *11 (E.D. Cal.2012) (quoting, inter alia, *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990)) (internal quotations omitted); *see La Parne v. Monex Deposit Co.*, 2010 WL 4916606, at *4 (C.D. Cal. Nov. 29, 2010) ("Relatively low interest in settlement does not mean that [a] [d]efendant should receive a windfall benefit as a result of absent class members failing to submit claims" in light of the deterrent goals of the FLSA.). If unclaimed funds are to revert to a defendant, the parties should explain why those funds should revert to Defendant. *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 612 (E.D. Cal. 2015). The parties have not done so here, and the Court would like to know why unclaimed funds should revert back to the Defendants.

**IT IS ORDERED** that Plaintiff's Motion to Approve Settlement Agreement (Doc. 247) is **denied without prejudice** to the filing of a renewed motion that corrects the deficiencies outlined in this order.

Dated this 24th day of March, 2020.

Honorable Steven P. Logan
United States District Judge