Brad A. Denton, #016454
Brad@DentonPeterson.com

**DENTON PETERSON, PC**
ATTORNEYS & COUNSELORS AT LAW

1930 N. ARBOLEDA ROAD, SUITE 200
MESA, ARIZONA 85213
TELEPHONE: (480) 325-9900
FACSIMILE: (480) 325-9901
HTTPS://ARIZONABUSINESSLAWYERAZ.COM
*Attorneys for Plaintiffs*



## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mary McNamara, Individually, and on Behalf of All Others Similarly Situated, | No. 2:17-cv-04026-SPL |
| Plaintiffs, | ***RENEWED* JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT** |
| v. | |
| Infusion Software Inc., an Arizona corporation, Clate Mask and Charisse Mask, a married couple; Curtis Smith and Jane Doe Smith, a married couple; Hal Halladay and Gina Caldwell Halladay, a married couple; Keith Reed, a married man; | (Assigned to the Hon. Steven P. Logan) |
| Defendants. | |

Plaintiff Mary McNamara and similarly situated Opt-Ins ("Plaintiffs") and Defendants, by and through undersigned counsel, respectfully submit this Renewed Joint Motion to Approve Settlement Agreement. The Parties request that this Court issue an order approving the Parties' Revised Settlement Agreement. This Renewed Motion is being filed as a result of this Court's order on 3/24/20 (the "Order"), which instructed the Parties to submit additional information for the Court's consideration.

In order to address the Court's concerns, the Parties have completed a table with additional information regarding the settlement payments to each Plaintiff (attached as Exhibit A), and have also executed a revised Settlement Agreement (attached as Exhibit B).

**A.     Additional information submitted at the Court's request**

The Order at 4 states that "Plaintiff also provides the vague statement that 'the settlement accounts for the risk that such recovery may not occur at all after trial and/or any appeal." To

clarify this point, the Parties advise the Court that during settlement discussions, Infusionsoft pointed out that (1) it is struggling in certain aspects of its business operations, creating a risk that it might not have the money to pay any judgment eventually obtained, and (2) if Plaintiffs obtained a favorable ruling on the application of the "fluctuating work week" method—which would have an enormous effect on the damages available to each Plaintiff—that Defendants would appeal that ruling to the Ninth Circuit and then, if the Ninth Circuit found in favor of Plaintiffs, would appeal to the U.S. Supreme Court (because such a ruling by the Ninth Circuit would create a circuit split on the issue). In addition, the various FLSA exemptions at play in the case created a risk that some or all of the Plaintiffs would receive no award at all. These are the factors underpinning Plaintiffs' above assertion to this Court regarding risk that was considered during settlement negotiations.

The Court also instructed the Parties to submit the following information related to the case:

- The amount of overtime hours claimed by each employee;

- The overtime calculations made on behalf of each employee;

- How much of each employee's damages were contained within the two-year and three-year statute of limitations periods; and

- The exemptions asserted by Defendants on each employee.

Each of these items has been provided to the Court in columns on Exhibit A to this Renewed Motion:

- The alleged overtime hours worked by each employee is listed in a column entitled "Alleged OT Hours";

- Using the overtime hours allegedly worked, the amount of alleged damages are listed for each employee in two separate columns:

  o The alleged damages based on a two-year statute of limitations are listed in a column entitled "Pltf's Damages (2 years)."

  o The alleged damages based on a three-year statute of limitations are listed in a column entitled "Pltf's Damages (3 years)."

2

- The various years in which exemptions were alleged by Infusionsoft as to each employee are listed in individual columns entitled:
  - "7(i) Exemption Years Asserted";
  - "Highly Comp Empl Exemption Years Asserted";
  - "Outside Sales Exemption Years Asserted"; and
  - "Admin Exemption Years Asserted."
- In addition, Exhibit A contains another column entitled "Additional Factors." That column contains additional factors ("+ positive" and "– negative") that figured into the calculation of the value of each individual Plaintiff's claim. This column helps demonstrate the careful analysis performed as settlement amounts were determined for each party, and sheds additional light on the complicated factors that applied as the calculations were made in this case.

**B.    Language regarding general release removed.**

The Court expressed concern at language in Section 3.1 of the Settlement Agreement regarding a general release. That language has been removed.

**C.    Disposition of unclaimed funds.**

The Court expressed concern that unclaimed funds would revert to Infusionsoft under Section 1.7 of the Settlement Agreement. That language has been revised to state that unclaimed funds will be donated to the Mesa United Way.

**D.    Corrections in calculations.**

When compiling the information related to the attached Exhibit A, Plaintiff realized that two calculations errors had been made. Those errors are fixed in the attached Exhibit A, and have been explained by Plaintiffs' counsel to all Plaintiffs. The errors do not affect the total amount payable by Defendants.

**E.    Conclusion**

Based on the foregoing, Plaintiffs respectfully request that this Court approve the parties' Settlement Agreement as fair and reasonable.

RESPECTFULLY SUBMITTED this 24th day of April, 2020.


/s/ Brad A. Denton
Brad A. Denton
Denton Peterson, PC
1930 N. Arboleda Road, Suite 200
Mesa, AZ 85213
Attorneys for Plaintiffs

/s/ Kristy L. Peters (with permission)
Mark Ogden
Kristy L. Peters
Cory G. Walker
LITTLER MENDELSON, P.C.
Attorneys for Defendants


I certify that the content of this document is acceptable to all persons required to sign the document and that authorization to electronically sign this document has been obtained.

/s/ Brad A. Denton


# CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system which will send notification of said filing to the CM/ECF registrants.

Mark Ogden
Kristy L. Peters
Cory Walker
Chris Suffecool
Andrea Lovell
Kyle Mabe
**LITTLER MENDELSON, P.C.**
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016
*Attorneys for Defendants, Infusion Software, Inc., et al.*

/s/ Jamie Giguiere

4

# EXHIBIT A

**EXHIBIT A**

**Agreed Settlement Payments, exclusive of attorneys' fees**

**McNamara v. Infusion Software, Inc., et al., Case No. 2:17-cv-04026-SPL**

| Plaintiff/Opt-In | Alleged OT Hours | Pltf's Damages (2 years) | Pltf's Damages (3 years) | 7(i) exemption yrs asserted | Highly comp empl exemption years asserted | Outside sales exemption years asserted | Admin exemption years asserted | Additional factors + positive factor - negative factor | Settlement amount | Service Award | Total Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adam Polselli | 85 | $ 2,202.91 | $ 3,120.79 | None | None | None | All | | $ 1,831.15 | $ 600 | $ 2,431.15 |
| Angela Durham | 1547 | $ 88,779.23 | $ 212,867.86 | 2015 | 2014 (partial) 2015 2016 | None | All | + credible deponent - Deft asserted should not be in representative action | $ 45,419.05 | $ 600 | $ 46,019.05 |
| Benjamin Heineman | 585 | $ 34,697.30 | $ 36,905.31 | None | None | None | All | + credible witness + relatively high proportion of damages in 2-yr period - hours somewhat high relative to coworkers | $ 19,685.97 | $ 600 | $ 20,285.97 |
| Brandon Cummings | 627 | $ 24,358.37 | $ 49,378.69 | 2014 2015 | None | 2015 2016 2017 | All | - Deft asserts should not be in representative action | $ 23,002.93 | | $ 23,002.93 |
| Brigham Weight | 2655 | $ 116,457.71 | $ 297,172.07 | 2014 2015 | 2014 (partial) 2015 2016 (partial) | None | All | - credibility of hours asserted - variance between hrs claimed and Deft records | $ 40,108.69 | $ 600 | $ 40,708.69 |
| Chad Garrison | 1030 | $ - | $ 101,088.13 | None | None | None | All | - low amount of damages in 2-yr period - credibility of hours claimed - variance between hrs claimed and Deft records | $ 21,568.91 | | $ 21,568.91 |
| Chris Kimble | 922 | $ 36,045.33 | $ 70,742.70 | None | 2016 | None | All | + credibility as communicator + credibility of hours asserted | $ 32,333.85 | | $ 32,333.85 |

| Plaintiff/Opt-In | Alleged OT Hours | Pltf's Damages (2 years) | Pltf's Damages (3 years) | 7(i) exemption yrs asserted | Highly comp empl exemption years asserted | Outside sales exemption years asserted | Admin exemption years asserted | Additional factors + positive factor - negative factor | Settlement amount | Service Award | Total Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Christopher Farney | 1784 | $ 206,895.29 | $ 255,370.55 | 2014 2015 | None | None | All | - credibility of hours claimed relative to coworkers + relatively high proportion of damages in 2-yr period | $ 38,862.34 | $ 600 | $ 39,462.34 |
| Clarence Mulligan IV | 2070 | $ 82,014.95 | $ 154,421.73 | None | None | None | All | - Number of hours claimed relative to coworkers - variance between hrs claimed and Deft records | $ 37,067.13 | | $ 37,067.13 |
| Cory Snyder | 465 | $ 8,137.50 | $ 63,997.30 | None | None | None | All | + credibility of hours claimed - Deft asserted should not be in representative action + produced significant information helpful to case generally | $ 44,378.54 | | $ 44,378.54 |
| Dale Jaramillo | 2126.25 | $ 123,439.83 | $ 188,203.65 | None | 2014 (partial) | None | All | + good communcator + produced evidence helpful for all plaintiffs | $ 60,234.78 | | $ 60,234.78 |
| Dan Poulsen | 1753 | $ 137,178.19 | $ 189,093.06 | None | 2014 (partial) 2015 2016 2017 (partial) | None | All | - credibility of hours claimed when compared to coworkers | $ 42,867.93 | | $ 42,867.93 |
| David Maycock | 1057 | $ 53,451.89 | $ 75,492.14 | None | 2016 | None | All | | $ 26,999.30 | | $ 26,999.30 |
| Derick Actkins-Farris | 488 | $ 39,312.75 | $ 39,312.75 | None | None | None | All | + relatively high proportion of damages in 2-yr period | $ 20,970.15 | | $ 20,970.15 |
| Dina Zadonowicz | 559 | $ - | $ 33,678.85 | None | 2014 (partial) | None | All | - low amount of damages in 2-yr period - credibility of hours claimed | $ 15,795.63 | | $ 15,795.63 |

| Plaintiff/Opt-In | Alleged OT Hours | Pltf's Damages (2 years) | Pltf's Damages (3 years) | 7(i) exemption yrs asserted | Highly comp empl exemption years asserted | Outside sales exemption years asserted | Admin exemption years asserted | Additional factors + positive factor - negative factor | Settlement amount | Service Award | Total Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Elliot Hullverson | 460 | $ - | $ 52,288.54 | None | None | None | All | - low amount of damages in 2-yr period<br>+ credibility of hours claimed, incl weekend hours | $ 33,470.00 | $ 600 | $ 34,070.00 |
| Emanuel Glyman | 823 | $ 15,742.82 | $ 41,000.42 | None | None | None | All | | $ 21,870.38 | | $ 21,870.38 |
| Eric Vaughn | 307 | $ - | $ 15,244.08 | None | None | None | All | - low amount of damages in 2-yr period | $ 8,131.47 | | $ 8,131.47 |
| Erin Sebastian | 136 | $ 6,470.38 | $ 6,470.38 | None | None | None | All | + relatively high proportion of damages in 2-yr period | $ 3,451.42 | | $ 3,451.42 |
| Gary Parker | 2045 | $ 145,043.89 | $ 218,261.31 | 2016 | 2015 (partial) 2016 | None | All | | $ 40,748.61 | $ 600 | $ 41,348.61 |
| Gina Mannino | 2460 | $ 84,272.83 | $ 172,978.29 | 2017 | 2017 (partial) | None | All | + credibility of hours asserted | $ 59,975.37 | $ 600 | $ 60,575.37 |
| James Clark | 1273 | $ 16,707.68 | $ 82,362.38 | None | None | None | All | - credibility of hours asserted | $ 35,146.89 | | $ 35,146.89 |
| Javier Gonzalez | 3755 | $ 337,967.40 | $ 434,282.19 | 2015 2016 2017 | 2015 (partial) 2016 2017 | None | All | - credibility of hours relative to coworkers<br>- large number of allegd hours outside workplace<br>- variance between hrs claimed and Deft records<br>+ relatively high proportion of damages in 2-yr period | $ 57,913.53 | $ 600 | $ 58,513.53 |
| Jeff Ballard | N/A | $ - | $ - | None | None | None | All | | $ - | | $ - |
| Jeff Benson Jr. | 54 | $ - | $ 2,306.93 | None | None | None | All | - low amount of damages in 2-yr period<br>- performance in deposition<br>- social media posts | $ 1,230.56 | $ 600 | $ 1,830.56 |

| Plaintiff/Opt-In | Alleged OT Hours | Pltf's Damages (2 years) | Pltf's Damages (3 years) | 7(i) exemption yrs asserted | Highly comp empl exemption years asserted | Outside sales exemption years asserted | Admin exemption years asserted | Additional factors + positive factor - negative factor | Settlement amount | Service Award | Total Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jeremiah Price | 110 | $ 5,302.09 | $ 5,302.09 | None | None | None | All | + relatively high proportion of damages in 2-yr period | $ 1,979.76 | | $ 1,979.76 |
| Jeremy Huckaby | 1026 | $ 9,839.06 | $ 109,379.84 | None | 2015 | None | All | - low amount of damages in 2-yr period - credibility of hours claimed relative to coworkers | $ 22,922.51 | | $ 22,922.51 |
| Jesse Hallock | 1860 | $ 172,566.33 | $ 244,214.76 | 2016 2017 | 2016 2017 | None | All | - credibility of hours when compared to coworkers - variance between hrs claimed and Deft records | $ 39,342.83 | $ 600 | $ 39,942.83 |
| Jody Bowen | 975 | $ 3,398.72 | $ 73,107.04 | None | None | None | All | - low amount of damages in 2-yr period | $ 38,996.64 | | $ 38,996.64 |
| Joel Rascon | 464 | $ 31,571.33 | $ 31,571.33 | None | 2017 (partial) | None | All | + relatively high proportion of damages in 2-yr period | $ 16,114.84 | | $ 16,114.84 |
| Joshua Thompson | 1144 | $ 78,780.53 | $ 84,428.84 | None | 2016 | None | All | + credible as witness + relatively high proportion of damages in 2-yr period | $ 30,137.04 | $ 600 | $ 30,737.04 |
| Justin Privett | 1261 | $ - | $ 74,034.00 | None | None | None | All | - low amount of damages in 2-yr period - most hours submitted late and unlikely to be awarded | $ 1,974.55 | | $ 1,974.55 |

| Plaintiff/Opt-In | Alleged OT Hours | Pltf's Damages (2 years) | Pltf's Damages (3 years) | 7(i) exemption yrs asserted | Highly comp empl exemption years asserted | Outside sales exemption years asserted | Admin exemption years asserted | Additional factors + positive factor - negative factor | Settlement amount | Service Award | Total Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kacey Koeppen | 2375 | $ 173,050.28 | $ 184,212.45 | None | 2016 | None | All | + relatively high proportion of damages in 2-yr period - variance between hrs claimed and Deft records | $ 38,330.55 | $ 600 | $ 38,930.55 |
| Kristen Jerome | 2672 | $ 93,824.39 | $ 164,423.09 | None | None | None | All | + credible deponent + help in developing case for benefit of all plaintiffs | $ 57,009.10 | $ 600 | $ 57,609.10 |
| Kristina Rueling | 1087 | $ 60,306.07 | $ 117,132.68 | 2015 2017 | 2014 (partial) 2015 2016 2017 (partial) | None | All | + credibility of hours asserted - Deft asserts should not be in representative action for 2015 and after | $ 24,847.66 | | $ 24,847.66 |
| Kyle Helenius | 282.25 | $ 14,954.11 | $ 14,954.11 | None | None | None | All | + relatively high proportion of damages in 2-yr period | $ 7,976.80 | $ 600 | $ 8,576.80 |
| Larry Reeves | 379.07 | $ - | $ 26,966.71 | 2015 | None | 2014 2015 | All | - low amount of damages in 2-yr period - Deft asserts should not be in representative action | $ 11,120.44 | $ 600 | $ 11,720.44 |
| Marco Zavala | N/A | $ - | $ - | None | None | None | All | | $ - | | $ - |
| Mary McNamara | 1493 | $ 29,187.96 | $ 149,242.11 | 2014 2016 | 2015 2016 (partial) | None | All | + Exceptionally credible witness + corroboration from many coworkers | $ 42,126.19 | $12,400 + $600 | $ 55,126.19 |
| Matthew Thompson | 2127 | $ 97,176.74 | $ 160,407.42 | None | 2016 | None | All | - credibility as witness - variance between hrs claimed and Deft records | $ 40,014.17 | $ 600 | $ 40,614.17 |

| Plaintiff/Opt-In | Alleged OT Hours | Pltf's Damages (2 years) | Pltf's Damages (3 years) | 7(i) exemption yrs asserted | Highly comp empl exemption years asserted | Outside sales exemption years asserted | Admin exemption years asserted | Additional factors + positive factor - negative factor | Settlement amount | Service Award | Total Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Melisa Martinez | 1089 | $ 30,788.68 | $ 61,782.58 | None | None | None | All | + credibility of hours asserted - Deft asserts should not be in representative action | $ 32,955.96 | | $ 32,955.96 |
| Melissa Blatt | 324 | $ 23,553.14 | $ 39,134.45 | None | None | None | All | | $ 20,875.04 | | $ 20,875.04 |
| Michael Fruchtl | 247 | $    - | $ 9,453.36 | None | None | None | All | - low amount of damages in 2-yr period - performance in deposition | $ 5,042.59 | $ 600 | $ 5,642.59 |
| Michael Kokkonen | 2888 | $ 121,106.37 | $ 277,177.29 | None | 2015 2016 | None | All | - credibility of hours asserted - variance between hrs claimed and Deft records | $ 39,293.96 | | $ 39,293.96 |
| Mike Hurley | 1445 | $ 77,110.44 | $ 164,421.08 | 2014 2015 | 2014 (partial) 2015 2016 | None | All | | $ 37,497.13 | | $ 37,497.13 |
| Renee Jones | 332.12 | $ 18,822.60 | $ 18,822.60 | None | None | None | All | + relatively high proportion of damages in 2-yr period | $ 10,040.32 | | $ 10,040.32 |
| Rob May | 125 | $    - | $ 6,370.21 | None | None | None | All | - low amount of damages in 2-yr period | $ 4,077.59 | $ 600 | $ 4,677.59 |
| Robert Hegarty | 1729 | $ 31,476.38 | $ 224,891.73 | 2014 2015 | 2014 2015 2016 (partial) | None | All | - hours alleged not consistent with coworkers' recollections - Deft asserts should not be in representative action for 2015 and after | $ 38,479.90 | $ 600 | $ 39,079.90 |
| Russell Emerick | 698 | $ 2,845.92 | $ 41,384.35 | 2016 | None | None | All | - low amount of damages in 2-yr period + credibility of hours claimed | $ 24,213.11 | | $ 24,213.11 |

| Plaintiff/Opt-In | Alleged OT Hours | Pltf's Damages (2 years) | Pltf's Damages (3 years) | 7(i) exemption yrs asserted | Highly comp empl exemption years asserted | Outside sales exemption years asserted | Admin exemption years asserted | Additional factors + positive factor - negative factor | Settlement amount | Service Award | Total Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ryan Gleeson | 975 | $ 14,242.82 | $ 14,242.82 | None | None | None | All | + relatively high proportion of damages in 2-yr period | $ 52,469.44 | | $ 52,469.44 |
| Ryan Golden | 964 | $ 28,882.39 | $ 33,261.16 | None | None | None | All | + relatively high proportion of damages in 2-yr period | $ 17,742.11 | | $ 17,742.11 |
| Sara Reheis | N/A | $ - | $ - | None | None | None | All | | $ - | | $ - |
| Steven Boldrey | 850 | $ - | $ 71,543.25 | None | None | None | All | - low amount of damages in 2-yr period + credible and compelling evidence regarding effect of overtime on family | $ 38,162.49 | | $ 38,162.49 |
| Steven Hatch | N/A | $ - | $ - | None | None | None | | | $ - | | $ - |
| Tommy Slocum | 825 | $ 40,910.64 | $ 40,910.64 | None | None | None | All | + relatively high proportion of damages in 2-yr period | $ 16,366.87 | | $ 16,366.87 |
| Trent Barber | 1470 | $ 52,045.39 | $ 133,775.35 | None | 2014 (partial) 2015 | None | All | - credibility of hours asserted | $ 37,005.73 | | $ 37,005.73 |
| Zach Masch | 603.25 | $ 37,156.76 | $ 37,156.76 | None | None | None | All | + relatively high proportion of damages in 2-yr period | $ 19,820.10 | | $ 19,820.10 |
| | | | | | | | | | | | |
| **Total:** | | | | | | | | | **$1,500,000** | | **$1,525,000** |

# EXHIBIT B

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into by and between Mary McNamara, individually and as a collective action representative ("Plaintiff"), and Infusion Software, Inc. ("Infusionsoft" or "Keap"), in the case of *Mary McNamara v. Infusion Software, Inc.*, *et al.* Case No. 2:17-CV-04026-SPL, currently pending in the U.S. District Court for the District of Arizona (the "Lawsuit"). Also named in the lawsuit are the individuals: Clate Mask, Charisse Mask, Hal Halladay, Gina Caldwell Halladay, and Keith Reed[1] (these individuals, with Keap, are referred to herein as "Defendants"). Plaintiff and Defendants are referred to collectively as the "Parties."

The Parties agree to cooperate in taking all reasonable steps necessary and appropriate to obtain approval of this Agreement in consideration for: (a) payment by Keap of the consideration expressed in this Agreement subject to the terms, conditions and limitations of this Agreement; (b) the release and dismissal with prejudice of all claims as set forth in this Agreement; and (c) other valuable monetary and non-monetary consideration as set forth in this Agreement. The enforceability of this Agreement is contingent upon approval by the Court and is entered into voluntarily by the Parties for settlement purposes only.

## FACTUAL BACKGROUND AND RECITALS

On October 31, 2017, Plaintiff filed a putative Collective Action Complaint against Infusion Software, Inc. in the U.S. District Court for the District of Arizona alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA") and Arizona Revised Statute § 23-350 *et seq.* for an alleged failure to pay statutorily-mandated overtime. On August 3, 2018, the Court granted the Parties' stipulation to conditionally certify and allow notice of the Lawsuit to be sent to "all of Infusion Software Inc.'s current and former Inside Sales Representatives who have not executed an arbitration agreement with Infusionsoft, from a date three years prior April 23, 2018." There are currently 57 individuals, those listed at Exhibit A to this Agreement, who submitted consents to join this action and who remain as opt-in plaintiffs in this matter (the "Collective").

The Parties exchanged disclosures, responded to written discovery, and took numerous depositions. After the discovery period closed, the Parties each filed motions seeking partial summary judgment. The Parties also participated in two sessions of a settlement conference with United States Magistrate Judge Eileen S. Willett. During these two conferences and a third settlement meeting, through counsel and also with the assistance of Judge Willett, the Parties have reached an agreement and hereby wish to resolve all matters pertaining to, arising from, or associated with the Lawsuit and involving those individuals who are current opt-in plaintiffs in the Lawsuit. Specifically, as set forth herein, all unpaid overtime claims Plaintiff and members of the collective action she seeks to represent for purposes of this settlement, have or may have had against Defendants, Keap's direct or indirect parents and subsidiaries, owners, shareholders, directors, officers, agents, managers, employees, assignors, representatives, and all related and

---

[1] Curtis Smith was also named as an individual Defendant in this action was dismissed by stipulation of the Parties. Charisse Mask and Gina Caldwell Halladay have been named only for purposes of implicating community property.

affiliated parent or subsidiary companies and divisions, through the date on which the Court approves this Agreement.

The Parties have agreed to settle the Lawsuit on the terms and conditions set forth herein (the "Settlement") in recognition that the outcome of the Lawsuit is uncertain and that achieving a final result through litigation would require substantial additional expense, risk, and time.

Plaintiff and her counsel, Brad Denton of Denton Peterson, P.C. ("Collective Action Counsel"), have conducted an investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit.

The Parties agree to undertake their best efforts, including all steps and efforts that may become necessary by order of the Court, to effectuate the terms and purposes of this Agreement.

## <u>AGREEMENT</u>

In consideration of the mutual covenants and other good and valuable consideration set forth in this Agreement, which incorporates by reference the Factual Background and Recitals above, the Parties agree, subject to approval of the Court, as follows:

## 1. CONSIDERATION

1.1. <u>Collective Action For Settlement Purposes</u>: Keap agrees that the Collective shall include all those individuals listed in Exhibit A to this Agreement, for settlement purposes only. In the event that the Agreement is not approved by the Court, both Parties expressly reserve all their rights in the Lawsuit, including without limitation Keap's right to challenge the propriety of collective action certification, the number or identity of the relevant individuals in the Collective, or the number or workweeks relevant to the Lawsuit, for any purpose as if this Agreement had not been entered into by the Parties.

1.2. <u>Consideration</u>: To fully and finally resolve the claims in the Lawsuit, Keap agrees to pay a settlement amount of One-Million-Five-Hundred-Twenty-Five-Thousand Dollars and No Cents ($1,525,000.00) (the "Settlement Fund") and Plaintiff's reasonable attorneys' fees and costs as determined by the Court after briefing from the Parties related to such costs and fees, to be initiated by Collective Action Counsel. Subject to the terms of this Agreement, the Settlement Fund shall be distributed among Plaintiff and the Collective as indicated in Exhibit A, which amounts have been determined by Plaintiff in her role as Representative and Collective Action Counsel. Plaintiff and Collective Action Counsel believe, and affirmatively represent, that the distribution of the Settlement Fund is fair and equitable based on the relative claims of Plaintiff and members of the Collective. The distribution of the Settlement Fund includes a Service Award (as defined in paragraph 1.5 below) for Plaintiff and the individuals indicated in Exhibit A (the "Service Award Plaintiffs") in a total amount of Twenty-Five-Thousand Dollars and No Cents ($25,000.00); The Settlement Fund also includes Plaintiff's and the Collective's members' share of applicable federal, state and local taxes required to be withheld by Keap from any

W-2 wage portion of any payment. The total amount Keap or any of the Defendants and/or the Released Parties (as defined below) shall pay to settle the Lawsuit is: (1) Plaintiff's reasonable attorneys' fees and costs, as determined by the Court, (2) Keap's share of applicable federal state and local taxes for any W-2 wage payment made in relation to the settlement of the Lawsuit, and (3) the Settlement Fund. Any undistributed and/or unclaimed and/or unpaid portion of the Settlement Fund as described below shall revert back to Keap. Any additional amounts required for settlement that are not contemplated herein shall be paid from the Settlement Fund and in no event shall Keap pay more than the total amount of (1) Plaintiff's reasonable attorneys' fees and costs, as determined by the Court, (2) Keap's share of applicable federal state and local taxes for any W-2 wage payment made in relation to the settlement of the Lawsuit, and (3) the Settlement Fund in settlement of the Lawsuit.

1.3. <u>Cooperation</u>:  The Parties shall cooperate, in good faith, and present to the Court for its consideration in connection with the approval of the Agreement such information as may be reasonably requested by the Court for approving the settlement.

1.4. <u>Effective Date</u>.  For purposes of this Agreement, the "Effective Date" shall mean the date on which the Court grants approval of the Settlement.  However, if the Settlement is not approved and/or does not become final for any reason, then this Agreement purporting to settle the Lawsuit shall become null and void *ab initio* (except for this provision).

1.5. <u>Service Award Payment.</u>  From the Settlement Fund, Collective Action Counsel may apply for a service award for Plaintiff and those other Service Award Plaintiffs indicated in Exhibit A in an agreed total amount not to exceed Twenty-Five Thousand Dollars ($25,000.00) ("Service Award"). Defendant will not oppose or object to the Service Award in exchange for a general release from the Service Award Plaintiffs. The Settlement is not conditioned upon the Court's approval of the requested Service Award, and any amount that is not approved shall remain part of the Settlement Fund. Keap will report the Service Award payments on IRS Forms 1099 and will not withhold taxes from any Service Award approved and ordered by the Court.

1.6. <u>Attorney's Fees and Costs.</u>  Collective Action Counsel may apply for an award of attorneys' fees ("Attorneys' Fees") and costs ("Litigation Costs") to be determined by the Court. The payment for any fees and costs ordered by the Court shall be made pursuant to the Court's order and any agreement by Counsel for the Collective and Defendants related thereto. Plaintiff and Collective Action Counsel represent and warrant that no attorney, other than Collective Action Counsel, has any attorney's lien on or claim to any proceeds arising out of the Lawsuit, and that the terms of this Agreement and any fees and costs ordered by the Court shall fully satisfy any and all claims by any attorney arising out of the Lawsuit. The Settlement is not conditioned upon the Court's approval of Collective Action Counsel's petition for attorneys' fees and litigation costs in any specific amount.

1.7. Any amount remaining in the Settlement Fund six months after the distribution of payments to Plaintiff and the Collective shall be donated to the United Way of Mesa.

1.8. The Parties agree that 50% of the payment to Plaintiff and each member of the Collective shall constitute wages from which the employer's and employee's applicable payroll taxes shall be withheld, and reported on an IRS Form W-2. The Parties further agree that 50% of the settlement payment to Plaintiff and each member of the Collective shall constitute liquidated damages reported on an IRS Form 1099. The wage payments shall be subject to all required employee-paid and employer-paid payroll taxes (federal income taxes, state income taxes, employee's share of FICA and FUTA taxes, and other state or local-specific statutory deductions) and other authorized or required deductions (garnishments, tax liens, child support, etc.), and the employee-paid portion of such amounts shall be paid from the Settlement Fund. The liquidated damages and any Service Award shall be treated as non-wage income.

1.9. <u>Tax Advice.</u>  Plaintiff, on her own behalf and as the collective action representative for the Collective, acknowledges and agrees that she has not relied upon any advice from Collective Action Counsel or Defendants as to the taxability of the payments received pursuant to this Agreement.

1.10.  Plaintiff and each member of the Collective, individually, will be responsible for their share of any tax liability, penalties, and interest arising from each individual's portion of payroll taxes.  Plaintiff and each member of the Collective will not be responsible for the employer's share of any tax liability, penalties, and interest arising from the employer's portion of payroll taxes.  Keap's share of payroll taxes shall be paid separate and apart from the Settlement Fund and payment of the same shall be the responsibility of Keap. All payments made to Plaintiff and the Collective in resolution of their claims in this Lawsuit will not be considered wages for purposes of calculating, or recalculating, benefits provided by Defendant, or to Defendant's employees and their beneficiaries, under the terms or conditions of any benefit plan.

## 2.  SETTLEMENT PROCEDURE AND ADMINISTRATION

2.1. Plaintiff will file a motion (the "Motion for Approval") for approval of the Settlement on behalf of Plaintiff and the Collective and agrees to confidentiality regarding the Settlement in accordance with Paragraph 4.3 below, as permitted by the Court.

2.2. <u>Settlement Procedure.</u>

    2.2.1.  Within five (5) calendar days of the Court's approval of the Settlement, Plaintiff shall provide Defendant with any additional information necessary to issue settlement payments, as approved by the Court, to Plaintiff and the Collective.

    2.2.2.  Within fourteen (14) calendar days after the Effective Date (provided that Plaintiff has filed a notice of dismissal with prejudice of the Lawsuit), Defendant shall provide to Counsel for the Collective the settlement payments to Plaintiff and the Collective and any Service Awards, as determined or approved by the Court.  Counsel for the Collective shall distribute the payments to Plaintiff and the Collective.

2.3. <u>Employment Taxes</u>.  The Parties recognize that the back pay awards to Plaintiff and the Collective will be subject to applicable tax withholding and reporting and employer payroll taxes. Keap shall be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employee's and the employer's share of payroll taxes from the back wage/payment of Plaintiff and the Collective and shall be responsible for paying from the Settlement Fund the employee's share of all state and federal payroll taxes or contributions imposed by applicable law (the employer's share of all FICA, FUTA, SUTA, Medicare, and/or state unemployment taxes, collectively referred to herein as the "Employer's Share of Payroll Taxes" shall be paid by Keap separate and apart from the Settlement Fund). Any amounts designated as Service Award, liquidated damages, or, ultimately, attorneys' fees and litigation costs shall not be subject to withholding and shall be reported to the IRS on Form 1099.

## 3.  RELEASE

3.1. <u>Release By Plaintiff and the Collective</u>: The Agreement is binding on Plaintiff and the Collective who release all wage and hour claims made against Defendants, including Keap, its affiliates and related companies, any of these entities' predecessors and successors and, in their capacities as such, all of their present, past, and future directors, officers, employees, representatives, attorneys, insurers, reinsurers, agents, and assigns, as well as all of these entities' affiliates, parent or controlling corporations, partners, divisions, and subsidiaries (collectively "Released Entities"), alleged in this Lawsuit, including, but not limited to, any and all wage and hour claims under the FLSA, and any derivative claims; any and all wage and hour claims, and derivative claims, arising out of any state wage, minimum wage, or overtime laws; and any claims relating to unpaid wages, minimum wage, and overtime compensation against the Released Entities, relative to all such claims that arose prior to the date of this Agreement. Insofar as the Court approves this Agreement, those members of the Collective who have executed arbitration agreements with Keap shall have their claims fully adjudicated through this settlement and shall have no right to bring claims for allegedly owed wages in arbitration that arose prior to execution of this agreement.

3.2. <u>Dismissal</u>:  Collective Action Counsel will file a stipulation of dismissal of the Litigation, with prejudice, pursuant to the terms contained herein, fourteen (14) calendar days following the Court's approval of the settlement.

## 4.  OTHER TERMS

4.1. <u>No Admission Of Liability</u>: The Parties agree and acknowledge that this Agreement is the result of a compromise and shall not be construed as an admission of liability, responsibility, or wrongdoing by Defendants or the Released Entities.  Defendants deny any liability, responsibility, or wrongdoing as alleged in the Lawsuit.  Furthermore, the Parties agree that this Agreement does not constitute an adjudication of the merits of the Lawsuit or any other matters released in this Agreement.  Accordingly, the Parties agree that this Agreement shall not serve or be construed as evidence that Defendants or the

Released Entities have engaged in any wrongdoing.  This Agreement is a settlement document and its use is governed by Federal Rule of Evidence 408.

4.2.  <u>Fair, Adequate, And Reasonable Settlement</u>: All of the Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement and that this Agreement has been executed with the consent and advice of counsel. The Parties agree that the Settlement is fair, adequate, and reasonable, and will so represent to the Court.

4.3.  <u>Confidentiality</u>: After the Effective Date, the Named Plaintiff, Current Opt-ins, and Defendants agree not to post information regarding the settlement online or on social media, including but not limited to post on, blogs, message boards, Facebook, LinkedIn, and Instagram.

4.4.  <u>No Prior Assignments</u>: The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged in this Settlement.

4.5.  <u>Construction</u>: The Parties agree that the terms and conditions of this Settlement are the result of intensive arms-length negotiations between the Parties, and that the Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his/her or its counsel participated in the drafting of this Settlement.

4.6.  <u>Captions And Interpretations</u>: Paragraph titles or captions contained in this Settlement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any of its provisions.

4.7.  <u>No Other Representations</u>: The Parties acknowledge that no promises or agreements not contained herein have been made with respect to the claims released herein; that this Agreement is not executed in reliance on any statement or representation made by the other or by any person employed by or representing the other Party other than the statements contained in the Agreement itself and that the terms of this Agreement are contractual and not merely recitals.

4.8.  <u>Continuing Jurisdiction</u>: The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement for the purpose of the administration and enforcement of this Agreement.

4.9.  <u>Choice Of Law</u>: The enforcement of this Agreement shall be governed and interpreted using the laws of the State of Arizona, without regard to the residence of any Party to this Agreement.

4.10.  <u>Amendments / Modifications</u>: This Agreement constitutes the entire agreement of the Parties concerning the subjects contained herein. No waiver, modification or amendment of the terms of this Agreement, whether made before or after the Court's approval of this

6

Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any Party to insist on the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist on the specific performance of any portion of this Agreement.

4.11. <u>Binding On Assigns</u>: This Agreement shall be binding on and inure to the benefit of the Parties, their affiliates, agents, employees, beneficiaries, heirs, executors, administrators, successors, and assigns.

4.12. <u>Counterparts / Original Signatures</u>: The Parties may execute this Agreement in counterparts, which shall have the same force and effect as if the Parties had signed the same instrument. Any signature made and transmitted by .PDF for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding on the Party who transmits the signature page by PDF.

4.13. <u>Corporate Signatories</u>: Any person executing this Agreement or any such related documents on behalf of a corporate signatory hereby warrants and promises for the benefit of all Parties hereto that such person has been duly authorized by such corporation to execute this Agreement or any such related documents.

4.14. <u>Effect Of Non-Approval</u>: In the event that the Agreement is not approved by the Court for any reason in the form submitted by the Parties, the Parties will attempt to address any concerns raised by the Court and resubmit a revised settlement agreement if possible, within 14 days of notice of the concerns raised by the Court, unless an alternate deadline is given by the Court. If the Parties cannot agree on a revised settlement agreement or if the Court denies the approval of a renegotiated settlement agreement, this Agreement and/or the re-negotiated agreement shall be terminated as of the date the Court's order denying approval of the Agreement or renegotiated agreement was entered. Upon termination of this Agreement or any renegotiated agreement: (A) This Agreement and, if applicable, the renegotiated agreement shall have no force or effect and no Party shall be bound by any of its terms; (B) the stipulation that the Collective or any member of the Collective is/are similarly situated to the Plaintiff under 29 U.S.C. Section 216(b) and any other law, or otherwise valid participants in this action, and the releases given shall be null and void; (C) Defendant shall retain the right to continue contesting the litigation, whether the case should be maintained as a class or collective action, the validity of any member of the Collective's participation in the Lawsuit, and to contest the merits of the claims being asserted in the case; (D) the Named Plaintiff and Current Opt-ins shall resume its position in the Lawsuit and retain its right to contest the merits of the claims and defenses being asserted in the Lawsuit; (E) nothing in this Agreement shall be used or construed by or against any Party as a determination, admission, or concession of any issue of law or fact in the litigation; and (F) the Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the litigation, including

any and all arguments related to those members of the Collective who have signed arbitration agreements with Keap.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE SIGNING THIS AGREEMENT.

PLAINTIFF

_____

**Mary McNamara**

Date: _____

**DEFENDANT Infusion Software, Inc.**

By: _Clate W. Mask_
    Clate W. Mask (Apr 24, 2020)

Printed Name: _Clate W. Mask, III_

Title: _CEO & Co-founder_

Date: _Apr 24, 2020_

**INDIVIDUAL DEFENDANTS: Clate Mask, Hal Halladay, Keith Reed**

_Clate W. Mask_                    Apr 24, 2020
Clate W. Mask (Apr 24, 2020)    Date:_____

_Hal G. Halladay_                  Apr 24, 2020
Hal G. Halladay (Apr 24, 2020)  Date:_____

_Keith Reed_                       Apr 24, 2020
Keith Reed (Apr 24, 2020)       Date:_____

**ATTORNEYS FOR PLAINTIFF:**                **ATTORNEYS FOR DEFENDANTS:**

_____          _____

Brad Denton                                Kristy Peters
DENTON PETERSON, PC                        Cory G. Walker
1930 N. Arboleda Rd., Suite 200            Andrea Lovell
Mesa, AZ 85213                             Chris Suffecool
(480) 325-9900                             LITTLER MENDELSON P.C.
brad@dentonpeterson.com                    2425 E. Camelback Road
                                           Suite 900
                                           Phoenix, AZ
                                           85016-2907
                                           (602) 474-3600
                                           kpeters@littler.com
                                           cgwalker@littler.com
                                           .

any and all arguments related to those members of the Collective who have signed arbitration agreements with Keap.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE SIGNING THIS AGREEMENT.

PLAINTIFF

**Mary McNamara**

Date: 4/17/20

**DEFENDANT Infusion Software, Inc.**

By: _Clate W. Mask_
Clate W. Mask (Apr 24, 2020)

Printed Name: _Clate W. Mask, III_

Title: CEO & Co-founder

Date: Apr 24, 2020

**INDIVIDUAL DEFENDANTS: Clate Mask, Hal Halladay, Keith Reed**

_Clate W. Mask_
Clate W. Mask (Apr 24, 2020)                    Date: Apr 24, 2020

_Hal G. Halladay_
Hal G. Halladay (Apr 24, 2020)                  Date: Apr 24, 2020

_Keith Reed_
Keith Reed (Apr 24, 2020)                       Date: Apr 24, 2020

8

**ATTORNEYS FOR PLAINTIFF:**

Brad Denton
DENTON PETERSON, PC
1930 N. Arboleda Rd., Suite 200
Mesa, AZ  85213
(480) 325-9900
brad@dentonpeterson.com

**ATTORNEYS FOR DEFENDANTS:**

Kristy Peters
Cory G. Walker
Andrea Lovell
Chris Suffecool
LITTLER MENDELSON P.C.
2425 E. Camelback Road
Suite 900
Phoenix, AZ
85016-2907
(602) 474-3600
kpeters@littler.com
cgwalker@littler.com

9

**EXHIBIT A**
**Agreed Settlement Payments, exclusive of attorneys' fees**
**McNamara v. Infusion Software, Inc., et al., Case No. 2:17-cv-04026-SPL**

| Plaintiff/Opt-In | Settlement amount | Service Award | Total Payment |
|---|---|---|---|
| Adam Polselli | $ 1,831.15 | $ 600 | $ 2,431.15 |
| Angela Durham | $ 45,419.05 | $ 600 | $ 46,019.05 |
| Benjamin Heineman | $ 19,685.97 | $ 600 | $ 20,285.97 |
| Brandon Cummings | $ 23,002.93 | | $ 23,002.93 |
| Brigham Weight | $ 40,108.69 | $ 600 | $ 40,708.69 |
| Chad Garrison | $ 21,568.91 | | $ 21,568.91 |
| Chris Kimble | $ 32,333.85 | | $ 32,333.85 |
| Christopher Farney | $ 38,862.34 | $ 600 | $ 39,462.34 |
| Clarence Mulligan IV | $ 37,067.13 | | $ 37,067.13 |
| Cory Snyder | $ 44,378.54 | | $ 44,378.54 |
| Dale Jaramillo | $ 60,234.78 | | $ 60,234.78 |
| Dan Poulsen | $ 42,867.93 | | $ 42,867.93 |
| David Maycock | $ 26,999.30 | | $ 26,999.30 |
| Derick Actkins-Farris | $ 20,970.15 | | $ 20,970.15 |
| Dina Zadonowicz | $ 15,795.63 | | $ 15,795.63 |
| Elliot Hullverson | $ 33,470.00 | $ 600 | $ 34,070.00 |
| Emanuel Glyman | $ 21,870.38 | | $ 21,870.38 |
| Eric Vaughn | $ 8,131.47 | | $ 8,131.47 |
| Erin Sebastian | $ 3,451.42 | | $ 3,451.42 |
| Gary Parker | $ 40,748.61 | $ 600 | $ 41,348.61 |
| Gina Mannino | $ 59,975.37 | $ 600 | $ 60,575.37 |
| James Clark | $ 35,146.89 | | $ 35,146.89 |
| Javier Gonzalez | $ 57,913.53 | $ 600 | $ 58,513.53 |
| Jeff Ballard | $ - | | $ - |
| Jeff Benson Jr. | $ 1,230.56 | $ 600 | $ 1,830.56 |
| Jeremiah Price | $ 1,979.76 | | $ 1,979.76 |
| Jeremy Huckaby | $ 22,922.51 | | $ 22,922.51 |
| Jesse Hallock | $ 39,342.83 | $ 600 | $ 39,942.83 |
| Jody Bowen | $ 38,996.64 | | $ 38,996.64 |
| Joel Rascon | $ 16,114.84 | | $ 16,114.84 |
| Joshua Thompson | $ 30,137.04 | $ 600 | $ 30,737.04 |
| Justin Privett | $ 1,974.55 | | $ 1,974.55 |
| Kacey Koeppen | $ 38,330.55 | $ 600 | $ 38,930.55 |
| Kristen Jerome | $ 57,009.10 | $ 600 | $ 57,609.10 |
| Kristina Rueling | $ 24,847.66 | | $ 24,847.66 |
| Kyle Helenius | $ 7,976.80 | $ 600 | $ 8,576.80 |
| Larry Reeves | $ 11,120.44 | $ 600 | $ 11,720.44 |
| Marco Zavala | $ - | | $ - |
| Mary McNamara | $ 42,126.19 | $12,400 + $600 | $ 55,126.19 |
| Matthew Thompson | $ 40,014.17 | $ 600 | $ 40,614.17 |

| Plaintiff/Opt-In | Settlement amount | Service Award | Total Payment |
|---|---|---|---|
| Melisa Martinez | $ 32,955.96 | | $ 32,955.96 |
| Melissa Blatt | $ 20,875.04 | | $ 20,875.04 |
| Michael Fruchtl | $ 5,042.59 | $ 600 | $ 5,642.59 |
| Michael Kokkonen | $ 39,293.96 | | $ 39,293.96 |
| Mike Hurley | $ 37,497.13 | | $ 37,497.13 |
| Renee Jones | $ 10,040.32 | | $ 10,040.32 |
| Rob May | $ 4,077.59 | $ 600 | $ 4,677.59 |
| Robert Hegarty | $ 38,479.90 | $ 600 | $ 39,079.90 |
| Russell Emerick | $ 24,213.11 | | $ 24,213.11 |
| Ryan Gleeson | $ 52,469.44 | | $ 52,469.44 |
| Ryan Golden | $ 17,742.11 | | $ 17,742.11 |
| Sara Reheis | $ - | | $ - |
| Steven Boldrey | $ 38,162.49 | | $ 38,162.49 |
| Steven Hatch | $ | | $ - |
| Tommy Slocum | $ 16,366.87 | | $ 16,366.87 |
| Trent Barber | $ 37,005.73 | | $ 37,005.73 |
| Zach Masch | $ 19,820.10 | | $ 19,820.10 |
| **Total:** | **$1,500,000** | **$25,000** | **$ 1,525,000** |