**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary McNamara, Individually, and on Behalf of All Other Similarly Situated,<br><br>              Plaintiffs,<br><br>vs.<br><br>Infusion Software, Inc., et al.,<br><br>              Defendants. | No. CV-17-04026-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs. (Doc. 254) Defendants oppose the Motion on several grounds. (Doc. 257) The Motion is fully briefed and for the reasons that follow, the Motion will be granted in part.[1]

Plaintiff brought a collective action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*. This is not a traditional class action case, which is a key fact for the Court's analysis of the Motion. This is a FLSA collective action, which is different from a class action: participants affirmatively choose to be bound by the settlement agreement and there are no absent class members whose claims are being settled because such absent class members are not bound by the case's outcome. *See, e.g.*, *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48, 49 (S.D.N.Y. 1972). The parties submitted a Revised

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* L.R. Civ. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Settlement Agreement (the "Settlement Agreement") for the Court's approval, and the Court approved the Settlement Agreement. (Doc. 253) In the Settlement Agreement, the parties outlined, and the Court approved, the following awards: "(1) $1,525,000.00 as total payment to Plaintiff and the Collective to be paid as set forth in Exhibit A to the Settlement Agreement; and (2) Plaintiff's reasonable attorneys' fees and costs as determined by the Court once Plaintiff and Defendants will have filed briefing on the issue." (Doc. 253 at 4) It is clear from the Settlement Agreement, and it should be clear from the Court's April 28, 2020 Order, that the attorneys' fees and costs which might be awarded to Plaintiff are not included in the collective action award itself, they are a separate sum to be paid by Defendants in addition to the $1,525,000.00. This is not a common fund case.

Plaintiff has requested a total of $872,680.00 in attorneys' fees and $34,053.77 in costs, for a total of $906,733.77. (Doc. 259 at 11) Defendants dispute the following aspects of the attorneys' fees requested: (1) the Ninth Circuit has set a benchmark that 25% of the total settlement award for attorneys' fees in class action settlements is reasonable—and Plaintiffs are requesting attorneys' fees of approximately 58% of the settlement award or 37% of the total fund; (2) Plaintiffs are seeking recovery for administrative and clerical tasks; (3) many of the time entries include internal conferences; (4) the request for $16,200 for future work is excessive; (5) the appropriate hourly rates to be used to calculate the fees are lower than those used by Plaintiffs in their calculation; and (6) applying 2020 rates for the work done since 2017 is unreasonable. (Doc. 257 at 1) Defendants also dispute several aspects of the requested costs as follows: (1) costs associated with video recordings are not recoverable; (2) the legal research entries are too vague and should not be awarded; (3) Plaintiffs seek recovery for general firm overhead expenses, such as IT services, which should not be awarded; (4) $90.61 in costs not associated with this case were not removed from the application; and (5) the parties agreed to use the same deposition for this case and the spin-off arbitrations, meaning the deposition costs should be allocated equally between the arbitrations and this case, reducing the amount recoverable. (Doc. 257 at 1–2) The

Court addresses those arguments in turn.

**1. The Percentage-of-Fund v. Lodestar Method Standard and Footnotes Issue**

Defendants argue that the Ninth Circuit has set a 25% of the total settlement award benchmark as a reasonable award of attorneys' fees in FLSA collective actions. (Doc. 257 at 4) Plaintiffs argue that such benchmark is only applicable to common funds cases, and that this case is not a common fund case. (Doc. 259 at 7–8)

The FLSA and the Settlement Agreement provide for Plaintiffs' recovery of reasonable attorneys' fees and costs. 20 U.S.C. § 216(b). It is true that the Ninth Circuit has stated that "the District Court has discretion . . . to choose either the percentage-of-the-fund or the lodestar method" to determine the reasonableness of a reasonable fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) It is also true that the Ninth Circuit has established a 25% benchmark for a reasonable fee award in common fund cases. *See, e.g.*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Bluetooth Headset Prods. Liab. Lit.*, 654 F.3d 935, 941 (9th Cir. 2011). However, it is clear to the Court that the percentage-of-fund method is only applicable to precisely common fund cases and no other type of cases.

Permitting attorneys in class actions to recoup their fees and costs from a percentage of the common fund "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The percentage of the common fund approach "allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.* In other words, in lieu of requiring each class member to contribute his or her fair share to the fees and costs associated with the litigation, the class members' total recovery is reduced and given to the attorneys.

This same logic, however, cannot be applied in the FLSA collective action context. Unlike most other types of claims, "FLSA rights cannot be abridged by contract or

otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). So, if a plaintiff is owed back wages under the FLSA, he or she is entitled to be paid those wages without reduction. And when a plaintiff is awarded back wages under the FLSA, he or she is also entitled to recoup reasonable attorneys' fees and costs from the defendant in addition to damages. 29 U.S.C. § 216(b) ("The court in such action shall, *in addition* to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added)). When these provisions are viewed together, it is clear that the percentage of the common fund analysis is not proper in FLSA cases.

As discussed above, when a common fund is created to compensate a class of plaintiffs and then reduced by a percentage in order to pay the attorneys' fees and costs, the plaintiffs' recovery is reduced. In the FLSA context, such an outcome undermines the statutory scheme set forth by Congress. FLSA plaintiffs, per the statute, are entitled to gain all of the benefit from successful litigation without paying attorneys' fees and costs. The FLSA shifts the burden of paying fees and costs to the defendant. Utilizing the percentage of a common fund approach shifts the burden of the cost of litigation back to the plaintiffs in contravention of the statute.

Plaintiffs cites to cases which are all distinguishable from this case. Indeed, most of the cases cited did not involve a FLSA collective action, and involved class actions, and provided for recovery of fees from the actual total fund in the settlement agreement, meaning it was subtracted from the total fund set forth in the settlement agreement. Even the discussion regarding constructive common fund approach came in the context of non-FLSA cases. *See e.g.*, *In re Bluetooth*, 654 F.3d at 943. The Court also finds the authorities from outside of the Ninth Circuit cited by Plaintiffs unpersuasive on their application of the constructive common fund approach and their reasoning inapplicable in this case. Finally, the Court notes that the case of *Morden v. T-Mobile USA, Inc.*, 2008 WL 11506696

(W.D. Wash. April 16, 2008) is instructive. Indeed, that case involved a FLSA collective action and the Court used the 25% benchmark for the requested fees. *Morden*, 2008 WL 11506696 at *2–3. The Court in that case found that "certain portions of the Plaintiffs' billing records indicate[d] that the lodestar [was] too high . . . . Certain entries suggest[ed] that unproductive time was included . . . . evidence [did] not establish that Seattle counsel's rates [were] typical for the Seattle legal community." *Id.* at *2. The Court then exercised its discretion to use the percentage method and award a fee of 25% of the settlement fund. *Id.*

This Court finds that it is not appropriate to use the percentage-of-fund method in this case. Accordingly, the Court will use the lodestar approach to review Plaintiffs' Motion and requested fees and now proceeds to examine each remaining argument raised by Defendants to determine a reasonable award of attorneys' fees.

Defendants have objected to the footnotes added by Plaintiffs to allegedly explain some of the time entries. (Doc. 257 at 2–4) Mostly, Defendants argue that the footnotes deprived them of a true meet-and-confer process because they were added after Defendants provided their detailed objections to the initial fees request, and "they are not, of themselves, actual contemporaneous billing entries and deserve no deference, having been added (in many cases years after the actual billing entries were written) simply to skirt Defendants' well-founded objections." (Doc. 257 at 3) Plaintiffs argue that such footnotes were added to clarify why the remaining entries were appropriate after having removed other entries. (Doc. 259 at 1) Plaintiffs further argue that Defendants could have requested to meet and confer more even after the Motion was filed, which they did not do. (Doc. 259 at 2)

The Court finds that it is not appropriate to consider the footnotes when reviewing the time entries. Indeed, time entries should be correct and accurate at the time they are made. When the time comes to submit an application for fees to the Court, permitting Plaintiffs to add footnotes after the meet-and-confer process with opposing counsel to

5

substantively clarify time entries seems odd. Indeed, if such practice was allowed by the Court, no time entry would potentially ever be final in the sense that when it was written and entered, it captured exactly what the timekeeper did. Billing entries must clearly set forth the task accomplished at the time they are written and recorded. Plaintiffs cannot be allowed to clarify and add to those entries years later simply to attempt to save the entries from the Court's review. Accordingly, the Court will not consider the footnotes.[2]

**2. Administrative and Clerical Tasks Entries**

Defendants point to a large amount of entries they claim are for administrative and clerical tasks and not compensable. (Doc. 257 at 6–7, Exs. E, G) Plaintiffs argue that the time entries identified by Defendants were not simply clerical or administrative tasks and that the Court should review the explanatory footnotes to see that the time entries capture recoverable time.

In *Missouri v. Jenkins*, 491 U.S. 274 (1989), the Supreme Court noted that "purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them . . . '[The] dollar value [of such non-legal work] is not enhanced just because a lawyer does it.'" *Id.* at 288 n. 10 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)). Furthermore, even when paralegals or legal assistants perform clerical or administrative tasks, fees should not be awarded for such tasks. *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (holding that such tasks should have been "subsumed in firm overhead rather than billed at paralegal rates.").

The Court has reviewed each entry identified by Defendants as improper administrative and clerical tasks in documents 257-5 and 257-7. As explained previously, Plaintiffs cannot save any inappropriate time entries by adding footnotes. Having reviewed those time entries, the Court finds that all the entries identified in document 257-7 are inappropriate. The Court cannot find a single entry in the 29 pages of the exhibit which is

---

[2] Although the Court will not consider the footnotes in evaluating the time entries at issue in the Motion, the Court did review the footnotes before reaching this decision.

not a clerical or admirative task. Accordingly, the Court will reduce the fees request by $96,485.00. The Court also wants to advise Plaintiffs' counsel to carefully review future application for attorneys' fees, specifically in large cases such as this one. The entries the Court reviewed in document 257-7 are flagrantly administrative and/or clerical tasks regardless of how much Plaintiffs' counsel tried to "dress them up" with fancy language in the footnotes. Experienced counsel, such as Plaintiffs' counsel here, should know better than attempting to recover fees for entries such as saving client information to spreadsheet or preparing documents for a meeting or conversing with IT regarding client portal login issues or credentials.

### 3. Internal Conferences Entries

Defendants have identified time entries which they contend are inappropriate fees for "unnecessary internal meetings and conferences between attorneys." (Doc. 257 at 7; Ex. H) Defendants argue that Plaintiffs have included time entries where several timekeepers billed for the same internal meeting and even where only one timekeeper billed for an internal meeting it does not mean the meeting was necessary. (Doc. 257 at 7) Plaintiffs argue that their practice is to "bill for conferences among timekeepers only if the conference is necessary for the delegation of work that can be more economically done for the client by a lower-cost timekeeper. Other inter-office conferences are billed by only one of the timekeepers involved." (Doc. 254 at 12)

A District Court can reduce a requested fee award for unnecessary internal conferences. *See, e.g.*, *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (reducing attorneys' fee award for time spent on unnecessary and duplicative intra-office conferences). Here, the Court has reviewed all the time entries identified by Defendants as unnecessary internal conferences. (Doc. 257-8) The Court finds that the time entries identified in document 257-8 are appropriate and will not reduce the requested fees on this issue. Indeed, the Court finds that Plaintiffs' counsels appear to have billed time, sometimes by more than one timekeeper, when it was necessary to delegate work to save

money to their clients. This is not an unusual billing practice and the Court has seen, and approved, fee requests where conferences between a partner and a junior associate were billed by both timekeepers, and properly recovered, because the conference was necessary for the partner to delegate work to the associate, resulting in a lower hourly cost. The Court also finds that none of the entries identified in document 257-8 appear to be unnecessary or duplicative. Accordingly, the Court will not reduce the requested fees based on the entries identified Exhibit H to Defendants' Response.

### 4. Future Work Fees

Defendants argue that Plaintiffs' request for $16,200 in fees for future work is "excessive considering their counsel has already received all settlement distributions." (Doc. 257 at 1) Plaintiffs' counsel replied that they agree to waive part of the requested amount and instead request 7.3 hours at $485.00 per hour (a total of $3,450.50) for Mr. Denton's time spent preparing the reply related to the Motion. (Doc. 259 at 11)

The Court finds that 7.3 hours for time spent preparing the reply is a little excessive given Mr. Denton's experience. The reply is a 12-page pleading with 4 pages of exhibits. (Doc. 259) The Court finds that the issues raised by Defendants' response are straightforward and did not necessitate extended time to research and address. Accordingly, the Court finds that five hours is a reasonable amount of time to spend preparing the reply. The requested fees of $3,450.50 for 7.3 hours of Mr. Denton's time will be reduced to 5 hours at $485.00 per hour for a total of $2,425.00. The requested fees will therefore be reduced by $1,115.50.

### 5. Block Billing Entries

Defendants argue that several time entries are "block billed," meaning they contain several separate tasks grouped together in a single entry which makes it impossible to evaluate the reasonableness of such entries. (Doc. 257 at 8; Ex. I)

A court may reduce the requested hours where counsel has "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness." *Welch*, 480 F.3d at

8

948. Here, the Court has reviewed all the time entries identified by Defendants as allegedly improper "block billing." (Doc. 257-9) The Court first notes that some of the entries identified here have already been at issue in other parts of this Order because Defendants raise several different arguments in opposition to some entries. Second, the Court concludes that the entries identified in document 257-9 violate LR Civ. 54.2(d). The block billing makes it difficult for the Court to assess what fees are excessive and what fees are reasonable, and the Court will therefore reduce the amount of fees awarded by 25%. *See Shaft v. Soc. Sec. Admin. Com'r*, 2014 WL 3809097, at *1 (D. Ariz. Aug. 1, 2014) (holding the Court may reduce requested fees when the requesting party engaged in block billing and the Court is unable with precision to separate out fees attributable to specific motions and excessive work). Accordingly, the Court will reduce the requested fees by $2,152.38 for improper block billing.

**6. Other Vague Entries and Arbitration Related Entries**

Defendants list several entries which they argue are so vague that they should be disallowed. (Doc. 257 at 8; Ex. J) Plaintiffs' counsel argue that those entries are not vague, and that the explanatory footnotes explain why they are not. (Doc. 259 at 4)

L.R. Civ. 54.2(e)(2)(A) requires that telephone conferences entries "identify all participants and the reason for the telephone call." L.R. Civ. 54.2(e)(2)(A). Furthermore, legal research entries "must identify the specific legal issue researched and, if appropriate, should identify the pleading or document the preparation of which occasioned the conduct of the research." L.R. Civ. 54.2(e)(2)(B). The Court reviewed each time entry identified by Defendants as being allegedly vague. (Doc. 257-10) The Court finds that a reduction in the fees captured by those time entries is appropriate because some of the entries are too vague and do not comport with the relevant standard. Accordingly, the Court finds that a reduction of $858.25 to the requested fees is warranted to account for entries in document 257-10 which are too vague.

Defendants have also identified time entries which they argue are related to the

9

arbitrations which spun-off from this litigation and should be disallowed. (Doc. 257 at 8; Ex. K) Plaintiffs' counsel argues that such time was "billed separately, and when tasks were performed that would benefit multiple cases, that time was apportioned among the various matters." (Docs. 254 at 13; 259 at 4) Plaintiffs' counsel further argues that Defendants completely ignored this "undisputed information." (Doc. 259 at 4)

The Court reviewed each entry identified by Defendants in documents 257-11 as alleged arbitration-related fees. The Court finds Plaintiffs' counsel explanation persuasive on this issue. It is true that it is impossible for the Court to know with 100% certainty that Plaintiffs' counsel properly captured fees related purely to arbitrations and fees which overlapped between some arbitrations and this case. However, Plaintiffs' attorneys are held to high ethical standards as practicing attorneys and the Court does not see a reason to doubt the explanation provided here, which relies on the declaration of Mr. Denton. It is true that a declaration related to attorneys' fees is self-serving to some extent, being tied to the attorneys recovering their fees, but it is also a declaration under oath. Accordingly, the Court will not reduce the requested fee award based on the time entries identified by Defendants as arbitration-related fees.

**7. Hourly Rates**

Defendants have raised two arguments regarding the hourly rate requested by Plaintiffs' counsel: (1) that the Court should not grant the request to apply 2020 rates; and (2) that the rates are not reasonable even applying previous years' rates. (Doc. 257 at 9–11) Defendants argue that, although in some cases it is appropriate to apply current rates to calculate a few award where the litigation spanned several years, it would be an improper fee enhancement to apply 2020 rates in this case because the vast majority of the work performed by Plaintiffs' counsel was performed in 2019 and the parties reached a settlement in December 2019. (Doc. 257 at 9) Plaintiffs' counsel argue that court regularly apply current rates in similar cases where attorneys' fees are awarded years after the litigation began. (Doc. 254 at 7–8)

> The Supreme Court itself has reasoned that
>
>> compensation received *several years* after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute.

*Missouri v. Jenkins*, 491 U.S. at 283–84 (emphasis added). The time value of money is a financial concept which clearly applies to an award of attorneys' fees. It is true that this concept becomes more and more relevant as more time passes between the rendering of the legal services and the award of the fees. *See, id.* "In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 483 U.S. 711, 716 (1987).

      Here, the case began in 2017 and the parties settled in December 2019. The Court approved the Settlement Agreement on April 28, 2020 and Plaintiffs' counsel timely filed the Motion. The Court is unpersuaded by Defendants' argument that applying past rates for each year, meaning the 2017 rate to work done in 2017, the 2018 rate to work done in 2018, is so straightforward that it is the only proper method to calculate a reasonable fee. Such argument ignores the concept of the time value of money and possibly any applicable interest as Plaintiffs' counsel pointed out. If the Court decided to apply each past year's rate to the work done during each of those years and stopped there as suggested by Defendants, it would be completely ignoring the concept that a sum of money with a specific worth in 2017 or 2018 is worth more in 2020 based on the time value of money.

The Court finds it would be unfair to Plaintiffs' counsel. Accordingly, the Court finds that applying the 2020 rates to this case is not an improper fee enhancement and will do so. It is not when the parties settle which is relevant but when the fee is received contrary to Defendants' argument. *See Missouri v. Jenkins*, 491 U.S. at 283–84. Here, the fees will be received by Plaintiffs' counsel approximately three years after the beginning of this case. The Court finds it is proper to apply the 2020 rates set forth by Plaintiffs' counsel. (Doc. 254 at 7–8)

Turning now to the issue of whether the 2020 rates set forth by Plaintiffs' counsel are reasonable hourly rates, the Court finds, based on its experience in the Phoenix market and currently prevailing rates, that the hourly rates set forth by Plaintiffs' counsel are reasonable. The Court finds Defendants' arguments and comparison with its own attorneys' rates unpersuasive. Accordingly, the Court will apply the 2020 rates identified by Plaintiffs' counsel to the requested fees.

Accordingly, the lodestar figure in this case, taking into account the reductions set forth previously in this Order, is $772,068.87.[3]

### 8. The *Kerr* Factors Adjustment

The Court must also consider the Kerr factors that have not been subsumed within the initial lodestar calculation. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988). These factors are: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 n.6 (9th Cir. 1987). There is a "strong presumption that the lodestar figure represents a reasonable fee, and adjustments of the lodestar are proper only in "rare" and "exceptional" cases. *Blum v. Stenson*, 465 U.S. 886,

---

[3] This figure is: $872,680 (requested by Plaintiffs' counsel; doc. 259 at 11) minus: $96,485 for clerical tasks, $1,115.50 for future work, $858.25 for vague entries; and $2,152.38 for block billing = $772,068.87

898-901 (1984).

Although Plaintiffs were the prevailing party, it is significant that the monetary result they obtained was just over $1,500,000.00, an amount that pales in comparison with the amount of damages requested by Plaintiffs on July 29, 2019. Indeed, Plaintiffs requested $16,441,921.40 in damages, excluding attorneys' fees and costs. (Doc. 257-13 at 1). The Supreme Court has noted that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). The Ninth Circuit has likewise noted that "[t]he time, to be compensated in an award, must be reasonable in relation to the success achieved. It is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the extent of success and the amount of the fee award." *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 810 (9th Cir. 1994) (quotation marks omitted) (citing *Hensley*, 461 U.S. at 436; *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

At the same time, the Ninth Circuit has made clear that attorneys' fee awards should not be made strictly proportional to the amount recovered in the case. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1033 (9th Cir. 2012). The determination to be made is the amount that constitutes a reasonable fee in light of all the circumstances in the case. Here, the Court finds that an award of $772,068.87 in attorneys' fees for a recovery of $1,525,000.00 as set forth in the approved Settlement Agreement would be unreasonable. The Court finds that a fee award of $650,000.00 represents the reasonable value of the work performed by Plaintiffs' counsel. This is a significant reduction from the lodestar amount, but the Court views this as an exceptional case where departure from the lodestar amount is warranted when there is such a huge difference between the potential damages in this case and the final settlement award. Indeed, the issues were not so novel and complex that this factor would weigh in favor of awarding the lodestar amount—although the case involved many employees, this is a traditional FLSA case for back wages. The Court finds that the remaining *Kerr* factors are neutral.

### 9. Video Depositions Costs

Defendants argue that some of the costs sought by Plaintiffs are associated with videotaped depositions and are not recoverable as either taxable costs under L.R. Civ. 54.1(e) or under 28 U.S.C. § 1920(2).

Under the Fair Labor Standards Act, costs ['of the action'] include reasonable out-of-pocket expenses." *Van Dyke v. BTS Container Serv., Inc.*, 2009 WL 2997105, at *2 (D. Or. Sept. 15, 2009) (citing *Smith v. Diffee Ford–Lincoln–Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002)). "Costs of the action "can include costs beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920." *Id.* (citing *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988)) (FLSA's costs provision authorizes an award of costs as part of a "reasonable attorney's fee," which would not be authorized under Rule 54 or 28 U.S.C. § 1920). Based on the case law cited above, the Court does not read L.R. Civ. 54.1(e) as prohibiting the recovery of video depositions costs as Defendants argued. The Court finds that such costs were reasonably incurred by Plaintiffs' counsel in preparation for a potential trial and in the course of litigation. Accordingly, the Court will not reduce the costs requests based on Defendants' arguments on video deposition costs.

### 10. Legal Research Costs

Defendants next argue that the costs of computerized legal research, which are recoverable under L.R. Civ. 54.2, should not be awarded here because "Plaintiffs' list of disbursements paid by Denton Peterson refers only to 'Westlaw Online Legal Research,' and the supporting bills provide no additional detail about what was researched and for what purpose." (Doc. 257 at 15) Defendants cite to documents 254-4 and 254-5 in support of their argument.

The Court finds that this argument is not well-taken and disingenuous from Defendants. The Court reviewed every single invoice for Westlaw research submitted by Plaintiffs' counsel in document 254-5. Taking the name of the individual who conducted legal research and the date charges were incurred and cross-checking that information with

document 254-4, the billing entries submitted by Plaintiffs' counsel, the Court was able to identify each and every single one of the charges and tie it to an actual time entry which clearly identifies the issues researched. For example, as pointed out by Plaintiffs' counsel, the first invoice for Westlaw charges is on page 3 of document 254-5 and shows that Elena Cottam performed research on November 2, 2017 and November 3, 2017. (Doc. 254-5 at 3) Turning to the billing entries in document 254-4, on page 4, a time entry for Elena Cottam on November 2, 2017, states "research re severance agreement and effect on FLSA claims." (Doc. 254-4 at 4) A time entry on November 3, 2017, states "research re severance agreement and FLSA claims." (Doc. 254-4 at 4) All remaining legal research entries are similarly adequate. Legal research entries must "*if applicable*, identify the pleading or document the preparation of which occasioned the conduct of the research." L.R. Civ. 54(e)(2)(B) (emphasis added) Not all legal research will be related to a specific pleading or document. The Court finds that the records and time entries submitted by Plaintiffs' counsel for computerized legal research are proper under the relevant local rules and will allow for recovery of those costs as requested by Plaintiffs' counsel. Defendants' argument that the bills provide no additional detail about what was researched is factually incorrect.

**11. Overhead Expenses**

Defendants have identified several costs items, totaling $2,706.94, which they argue are not recoverable because they are properly categorized as overhead and some of them are not specific to this case. (Doc. 257 at 16) Plaintiffs argue that those costs were incurred to convert electronic documents into a format readable by Plaintiffs because Defendants produced large information of electronic information in "formats that were deliberately difficult to read." (Doc. 259 at 10) Plaintiffs also argue that it would be instructive to see how much Defendants paid for IT services in this case, but that Defendants refused to turn over their invoices to allow for a comparison. (Doc. 259 at 10)

The Court finds that those costs are not recoverable. Based on its review of the invoices and the parties' arguments, the Court is not convinced that those costs are nothing

15

more than costs associated with converting files in the traditional sense, even if the volume was large here, and those costs are not recoverable as they should be subsumed in a firm overhead. Furthermore, regarding the issue of the DocuSign subscription, the Court is not persuaded that Plaintiffs' counsel only used the subscription for this case and that it was necessarily incurred in this case. Accordingly, the Court will not allow the recovery of the $2,706.94 in costs identified by Defendants as overhead costs.

### 12. Apportionment of Deposition Costs

Defendants' final argument related to the Motion is that some of the deposition costs needed to be allocated among this case and the related arbitrations which took place before the parties settled this action. (Doc. 257 at 17) Defendants provided a chart identifying the deposition in this case and how the Court should allocate the costs of each deposition based on the number of active cases at the time the deposition was taken. (Doc. 257-15) Plaintiffs argue that no duplication of costs took place, meaning that none of those costs have been recovered through any arbitration, and that more importantly, the allocation of costs proposed by Defendants is not reasonable. (Doc. 259 at 11)

The parties agreed that because this case and related arbitrations might make use of the same depositions, the same transcripts would be used interchangeably to avoid duplication of costs. It appears that none of the arbitration claims went to a hearing and that each of those claims settled. The parties agree that none of the claimants in any of the arbitration proceedings received any of their costs. (Docs. 257 at 17; 259 at 11) Defendants do not dispute that each deposition taken was noticed in, and necessary for, this case.

The Court is unpersuaded by Defendants proposed allocation, and reduction, of costs for the depositions. Indeed, as Plaintiffs pointed out, the apportionment appears unreasonable. This case involved 57 plaintiffs, who settled through the approved Settlement Agreement. There were only 11 arbitration claimants who were forced to arbitrate their claims related to this litigation because they had signed arbitration agreements. Plaintiffs requested a total of $16,209.00 for deposition costs. Defendants

argue that a proper apportionment would reduce those requested costs down to $3,079.21. (Docs. 257 at 17; 257-15 at 4) In essence, out of the $16,209.22 of depositions costs requested, Defendants argue that the 57 plaintiffs in this case account for $3,079.21 and the 11 arbitration claimants account for $13,129.79. The Court is puzzled by this apportionment and it seems grossly stacked "in favor" of the arbitration claims—meaning those claims somehow draw most of the costs of the depositions. Defendants' explanation that the calculation makes sense because the costs of each deposition should be divided by the number of pending cases at the time the deposition was taken seems to be more about splitting hair than an actual reasonable effort to apportion costs. Accordingly, the Court will award Plaintiffs the $16,209.22 in depositions costs they requested.

Accordingly, based on the Court's review of Plaintiffs' request for costs, the Court will award Plaintiffs $31,346.83 in costs.[4]

**IT IS ORDERED** that Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 254) is **granted in part**.

**IT IS FURTHER ORDERED** that Plaintiffs are awarded $650,000 in attorneys' fees and $31,346.83 in costs.

Dated this 21st day of August, 2020.

Honorable Steven P. Logan
United States District Judge

---

[4] This figure is: $34,053.77 (requested by Plaintiffs' counsel; doc. 259 at 11) minus $2,706.94 for overhead expenses = $31,346.83.